UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HOWARD SALTEN,

                     Plaintiff,

   -against-

UNITED STATES OF AMERICA, ERIC HOLDER,
LORETTA LYNCH, STATE OF NEW YORK, ERIC
SCHNEIDERMAN, CITY OF NEW YORK,
TAVISTOCK GROUP, JOSEPH C. LEWIS, RASESH
THAKKAR, JOSEPH G. GOLIA, ROSECKI,
ROSECKI & ASSOCIATES, CYNTHIA ROSECKI,
TOM ROSECKI, ANDREW MORGANSTERN,
DANIELLE MASTRIANO, NFN SINGH, PRIVATE
CAPITAL GROUP, ROUNDPOINT MORTGAGE
SERVICE CORPORATION, ROUNDPOINT
MORTGAGE CORPORATION, "JOHN DOE #1"
through "JOHN DOE #10" inclusive, such names being
fictitious and unknown to plaintiff; the persons or parties
intended being natural persons, corporations, or other
legal entities, involved in or having or claiming an interest
in or lien upon the premise described in the premises
located at 95-14 67th Avenue, Forest Hills, NY 11374,
each individually or in their official capacities, if any.

                     Defendants.
------------------------------------------------------------X

**ORDER**
14-CV-6014 (SJF)(GRB)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    03 2014    ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On October 14, 2014, *pro se* plaintiff Howard Salten ("Salten" or "plaintiff") filed the instant Complaint [Docket Entry No. 1 ("Compl.")], Motion for a Temporary Restraining Order [Docket Entry No. 2], and an Order to Show Cause [Docket Entry No. 3], seeking to prevent the foreclosure sale by defendants of property located at 95-14 67th Avenue, Forest Hills, New York 11374 (the "Property"). On October 14, 2014, the Court directed defendants to show cause why

1

an order should not be issued enjoining defendants during the pendency of this action from the sale of the Property, and temporarily restraining and enjoining defendants from selling the Property pending the submission of papers on October 28, 2014. Docket Entry No. 5 (Signed Order to Show Cause). For the reasons set forth below, the Court *sua sponte* dismisses plaintiff's complaint and lifts the stay of the sale imposed by its October 14, 2014 Signed Order to Show Cause.

I. BACKGROUND

The instant complaint stems from an action commenced by Greenpoint Bank ("Greenpoint") in the Supreme Court for the State of New York, Queens County (the "State Court") to foreclose a mortgage on the Property. On March 28, 2013 a Judgment of Foreclosure and Sale was entered by Justice Gavrin in the State Court in that action.[1] *See* Docket Entry No. 9-1 (Defendants' Memorandum in Opposition to Request for a Stay ("Def. Mem.")), at 1; Morganstern Aff., Ex. C (State Court Judgment of Foreclosure and Sale, dated March 28, 2013).

---

[1] The history of the foreclosure action in the State Court dates back to 2004, when Greenpoint commenced an action in the State Court to foreclosure on the mortgage plaintiff had obtained from Greenpoint in 1998. *See* Morganstern Aff. ¶ 4; Compl., at 4. On June 8, 2005, the State Court issued an order granting summary judgment in favor of Greenpoint and against Salten, and referred the matter to referee to compute the amount due to Greenpoint. Morganstern Aff., Ex. A (State Court Order of Summary Judgment and Appointing Referee, dated June 8, 2005). Greenpoint subsequently brought a motion to confirm the referee's report and to obtain a judgment of foreclosure. Morganstern Aff. ¶ 5. Salten opposed the motion and requested a conference. *Id.* Justice Golia of the State Court granted the request and held numerous conferences in an attempt to resolve the matter which proved unsuccessful. *Id.* Justice Golia then set the matter down for a "special and unique hearing solely for an offer of proof and to allow Salten to establish (1) that he had made timely mortgage payments into his self-styled 'escrow' account as well as, (2) that he had made other related payments, such as real estate taxes, water bills, insurance, etc." Morganstern Aff., Ex. B (State Court Memorandum, dated December 29, 2011), at 2. As noted by Justice Golia in his subsequent decision, "[d]uring the entire course of [the] special offer of proof hearing....Mr. Salten did not submit a single item of proof to establish what he assert[ed]." *Id.* at 8. After the proof of hearing came to an end, "the parties were given an opportunity to submit post-hearing memoranda...but Mr. Salten chose not to submit." *Id.* at 11. Justice Golia thus entered an order finding that "plaintiff's Judgment of Foreclosure shall stand and that defendant has failed to establish any claims for an offset." *Id.* at 11-12.

2

A foreclosure sale was scheduled for August 16, 2013, but was stayed based upon Salten's claim that he had applied for a reverse mortgage and intended to satisfy the subject mortgage. Morganstern Aff. ¶¶ 10-12. On April 24, 2014, finding that Salten had "had ample opportunity to apply for secondary financing to satisfy the mortgage," Justice Gavrin lifted the stay granted by the order to show cause and allowed the mortgagee to proceed with the foreclosure and sale. Morganstern Aff., Ex. D (State Court Order, dated April 24, 2014), at 1. The April 24, 2014 order also enjoined Salten from filing additional motions or commencing additional proceedings in the State Court without first obtaining leave of the court. *Id.* at 2. A new foreclosure sale was scheduled to take place on November 7, 2014 but was enjoined by the temporary stay granted by this Court on October 14, 2014. Morganstern Aff. ¶ 14; Def. Mem., at 2.

In the instant action, plaintiff claims he "has been denied access to the New York State trial and appellate courts, subjected to fraud, illegality and denied equal rights under the Constitution and laws of the State of New York and the United States of America." Compl., at 3-4.[2] Plaintiff does not identify which laws of the State of New York and the United States of America give rise to his claims, and in the section of the civil cover sheet accompanying the complaint titled "Nature of Suit," plaintiff has inexplicably selected "Securities/Commodities/Exchange." Docket Entry No. 1-1 (Civil Cover Sheet). In the complaint, plaintiff alleges that the defendants "individually and in concert have conspired to deny [him] his rights under the of [sic] the Constitution and laws of the United States and the State of New York for due process in furtherance of their own frauds and grand thefts for their own unjust enrichment." Compl., at 4. Plaintiff alleges federal question jurisdiction based upon

---

[2] Because the Complaint lacks paragraph or page numbers, citations to the Complaint cite to the page numbers in the ECF printout of the Complaint.

"denial of Civil and Constitutional rights, denial of due process, seizure of personal property without due process, and laws of the defendant United States of America and defendant State of New York" and diversity jurisdiction.[3] Compl., at 2.

Plaintiff objects to various procedural aspects of the State Court proceedings, including that "an action was commenced by sewer service of a summons and complaint by a New York City process server licensed by defendant City of New York who failed to punish server and employer" (Compl., at 4), and that defendant Joseph G. Golia of the State Court "ignored" plaintiff's Motion for a Traverse that addressed this "fraudulent filed affidavit of purported personal service" and "merely entered summary judgment against plaintiff as was his previous practice for his and his co-conspirators own unjust enrichment, assigning to his friend as referee to determine monies owed which took approximately five years for a determination without requisite input from herein plaintiff." Compl., at 4-5. Plaintiff's complaint also contains allegations that defendant Danielle Mastriano, "could not produce any papers in the action including the [sic] standing of defendant Rosecki, Rosecki & Associates PC or the alleged mortgage holder defendant Private Capital Group or Roundpoint Mortgage Servicing Corporation" (Compl. at 5), that defendant NMN Singh "twice appeared and told Golia that there

---

[3] This Court does not have diversity jurisdiction over this action. Plaintiff states that the basis for diversity jurisdiction is that "the citizenship of plaintiff is in the State of New York…and the defendants in various states as heretofore listed above in Washington, DC, Windermere, Florida, Solon, Ohio, and Charlotte, North Carolina." Compl., at 3. However, at least one, if not more, of the defendants, the City of New York, is a citizen of New York State. *See Schiavone Const. Co. v. City of New York*, 99 F.3d 546, 548 (2d Cir. 1996) ("The City of New York is, not surprisingly, a citizen of the State of New York"). Because 28 U.S.C. § 1332 "require[s] complete diversity between all plaintiffs and all defendants," and because plaintiff Salten and defendant City of New York are both citizens of New York state, there is not complete diversity and the Court does not have diversity jurisdiction. *Taldone v. Barbash*, No. 14-civ-2147, 2014 WL 1800794, at *5 (E.D.N.Y. May 5, 2014) (citing *Lincoln Property Co. v. Roche*, 546 U.S. 81, 89, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005)); *see also Schiavone Const. Co.*, 99 F.3d at 547 ("It is well settled that diversity of citizenship jurisdiction does not exist if any plaintiff is a citizen of the same state as any defendant.").

4

were no records although ordered by defendant Joseph G. Golia to produce them" (*Id.*), and that Andrew Morganstern "produced boiler plate documents purported to be those of plaintiffs [sic] mortgage which in fact were not the papers signed by plaintiff." *Id.*[4]

Plaintiff's complaint seeks the following relief: "a stay the [sic] sale three days hence on October 17th 2014...of plaintiffs [sic] home located at 95-14 67th Avenue, Forest Hills, NY, 11374" (Compl., at 7); "an Order for a permanent injunction pending the decision upon the trial of the substantive issues" (*Id.*); and for the Court to "consolidate the hearing with the trial heretofore denied plaintiff by defendant Joseph G. Golia and defendant State of New York on the merits, facts and law." *Id.*

II. DISCUSSION

A. Standard of Review

In reviewing plaintiff's submissions, the Court is mindful that because plaintiff is proceeding *pro se*, his submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Submissions by pro se plaintiffs are to be construed liberally and "interpret[ed]...to raise the strongest arguments that they suggest." *Scott v. Rock*, 2013 WL 360398 (E.D.N.Y. Jan. 30, 2013) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

---

[4] Additionally, plaintiff makes allegations against defendants that are at best irrelevant, including that "[d]efendant Andrew Morganstern twice arrested for felony mortgage fraud, refused to sign the ordered affidavit ordered by the administrative judge Jonathan Lippman to curtain the criminal frauds perpetrated by attorneys and their clients documented in the literature" (Compl., at 6), that "Joseph G. Golia was accused of complicity in the murder of pro se litigant Sonny Sheu who came before him in 2001 and had evidence of unjust enrichment of defendant Joseph G. Golia" (*Id.*), and that "[a] former Russian KGB member submitted evidence of bribes in excess of $100,000 to herein defendant Joseph G. Golia." *Id.* In any event, evidence has been submitted that questions the truth of some of these allegations. Andrew Morganstern has sworn that he has "never been arrested for mortgage fraud or any other crime." Morganstern Aff. ¶ 16.

5

However, "[i]t is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction. Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)); *see also Henderson ex rel. Henderson v. Shinseki*, – U.S.–, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press…Objections to subject matter jurisdiction…may be raised at any time."). Accordingly, "before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) (citations omitted).

B.  Jurisdiction

The *Rooker–Feldman* doctrine precludes the Court from exercising jurisdiction in this matter. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Under the *Rooker-Feldman* doctrine, a federal district court does not have subject matter jurisdiction "over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 84 (2d Cir. 2005). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or asserts claims that are 'inextricably intertwined' with state court determinations." *Park v. City of N.Y.*, No. 99–civ–2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (citations omitted). The doctrine precludes a district

court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

The Second Circuit has delineated four requirements for the application of the *Rooker–Feldman* doctrine: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Murphy v. Riso*, No. 11-civ-0873, 2012 WL 94551, at *6 (E.D.N.Y. Jan. 12, 2012) (citing *Hoblock*, 422 F.3d at 83).

All four requirements are met here. With respect to the first and fourth requirements, the procedural requirements, it is clear that plaintiff lost in state court when the Judgment of Foreclosure was entered against him (*see* Morganstern Aff., Exs. C and D), and that the state-court judgment was rendered before plaintiff filed the instant action on October 14, 2014. *See* Morganstern Aff., Ex. C (Judgment of Foreclosure and Sale entered by the State Court on March 28, 2013), Ex. D (State Court order lifting stay of foreclosure sale entered on April 24, 2014).

With respect to the second and third prongs, the substantive requirements, the Court notes that although plaintiff's complaint is far from a model of clarity, construing the complaint liberally and to raise the strongest arguments it suggests, plaintiff has alleged injuries, such as "seizure of personal property without due process" (Compl., at 3), resulting from the Judgment of Foreclosure entered by the State Court and/or from the State Court proceeding itself. Compl., at 3-7. The second requirement for application of the *Rooker-Feldman* doctrine is satisfied because these alleged injuries are all traceable directly to, and inextricably intertwined with the

7

State Court proceeding and the State Court's decision. *See Johnson v. Myers*, No. 10-civ-1964, 2014 WL 2744624, at *8 (E.D.N.Y. June 16, 2014) (holding that *Rooker-Feldman* doctrine divested the court of jurisdiction over plaintiff's procedural due process claim which was traceable directly to the family court orders); *Cogswell v. Rodriguez*, 304 F.Supp.2d 350, 355–56 (E.D.N.Y. 2004) (holding that plaintiff's due process and equal protection claims against state court hearing examiner and county deputy sheriffs "were inextricably intertwined with the Family Court's determinations regarding child support and could have been raised in state court, either in the Family Court or on appeal" and thus were barred by the *Rooker-Feldman* doctrine).

The third requirement for application of the *Rooker-Feldman* doctrine is met because adjudication of plaintiff's claims would require this Court to review the State Court proceedings and the basis for the State Court's Judgment of Foreclosure. *See Sanchez-Preston v. Luria*, No. civ-96-2440, 1996 WL 738140, at *1-3 (E.D.N.Y. Dec. 17, 1996) (holding that Court lacked subject matter jurisdiction over plaintiff's claim that defendant state court judge deprived her of a fair hearing because the claim arose "out of an allegedly erroneous or unconstitutional proceeding in New York Family Court" and "[a]djudication of plaintiff's § 1983 claim would necessarily require this Court to review the basis of the Family Court's determinations and the validity of the challenged orders themselves"); *Jaeger v. Cellco P'ship*, No. 13-1751, 542 F. App'x 78, 80 (2d Cir. 2013), *cert. denied*, No. 13-1383, 2014 WL 2115546 (U.S. Oct. 6, 2014) ("By challenging the dismissal of her Connecticut state-court appeal as a violation of her due process and equal protection rights, [plaintiff] seek[s] federal-court review and rejection of the state-court judgment...Accordingly, this claim is barred by the *Rooker–Feldman* doctrine." (internal citations and quotations omitted)); *see also Kaminski v. Comm'r of Oneida Cnty. Dept. of Soc. Servs*, 804 F. Supp. 2d 100, 105–06 (N.D.N.Y. 2011) (holding that plaintiffs' due process

claim that complained of "false evidence, contradicting statements, and perjured declarations" in the underlying Family Court proceeding was barred by *Rooker–Feldman*).

This decision is consistent with the numerous courts in this Circuit that have held that attacks on a judgment of foreclosure are barred by the *Rooker-Feldman* doctrine,[5] as well as the numerous courts in this Circuit that have held that constitutional claims involving review of state court proceedings are barred by the *Rooker-Feldman* doctrine.[6] Moreover, as in the case here, "the fact that [a] plaintiff alleges that the state court judgment was procured by fraud does not remove his claims from the ambit of *Rooker-Feldman*." *Parra v. Greenpoint Mortgage Co.*, No. 01-civ-2010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) (citations omitted). "Under *Rooker-Feldman*, even if the state court judgment was, in fact, wrongfully procured the state court judgment remains in full force and effect until it is reversed or modified by an appropriate state court." *Id.* (citations omitted).

III.  CONCLUSION

Based upon the foregoing, plaintiff's complaint, as well as his request for a temporary restraining order are dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

---

[5]  *See, e.g., Wu v. Levine*, No. 05-civ-1234, 2005 WL 2340722, at *2 (E.D.N.Y. June 3, 2005), *aff'd*, 314 F. App'x 376 (2d Cir. 2009) ("Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine") (collecting cases).

[6]  *See, e.g., Sanchez-Preston*, 1996 WL 738140, at *3 ("federal courts are prohibited from exercising jurisdiction over challenges to state court decisions arising out of judicial proceedings, even if those challenges alleged that the state court actions [themselves] were unconstitutional" (citations omitted)); *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 365 (E.D.N.Y. 2010) ("a finding by this Court that Defendants' conduct violated Plaintiffs' due process rights would necessarily involve a review of the state court's determination...[s]uch a review would be barred by the *Rooker-Feldman* doctrine"); *Bernstein v. New York*, No. 06-civ-568, 2007 WL 438169, at *6 (S.D.N.Y. Feb. 9, 2007) (holding that the *Rooker-Feldman* doctrine divested the court of jurisdiction over plaintiff's claim that he was "denied due process in the course of...the judicial proceedings that led to the state court judgment" because if the court "were to declare that [plaintiff] was denied due process during the state court proceedings, it would effectively be reversing a judgment of the state court.").

9

The stay of the sale imposed by the Court's October 14, 2014 Signed Order to Show Cause is hereby lifted. The Clerk of the Court shall enter judgment accordingly and close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: November 3, 2014
       Central Islip, New York